UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| CORNWELL QUALITY TOOLS COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. **CV 405-150** |
| JAMES L. EZELL and DOUGLAS H. SPINKS, | ) ) ) ) | |
| Defendants. | ) | |

# COMPLAINT

NOW COMES Plaintiff Cornwell Quality Tools Company ("Cornwell"), and files its complaint against Defendants James L. Ezell ("Ezell") and Douglas G. Spinks ("Spinks") (collectively referred to herein as "Defendants"), alleging as follows:

### JURISDICTION AND VENUE

1. This is an action for federal trademark infringement, unfair competition, and false destination of origin, and arises under the trademark laws of the United States, namely, Title 15 of the United States Code and, more particularly, 15 U.S.C. §§ 1114, 1116-18, 1121 and 1125(a), and related causes of action under the laws of the State of Georgia and common law arising from the wrongful use by Defendants of certain of Cornwell's registered trademarks as described below. This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b).

2. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) with respect to claims arising under the laws of the State of Georgia in that such claims are so related to the claims under the trademark laws of the United States that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this court under 28 U.S.C. § 1391(b) in that Defendants reside in, and a substantial part of the events or omissions giving rise to Cornwell's claims arose in, this judicial district.

## PARTIES

4. Plaintiff Cornwell is a corporation of the State of Ohio, having an office and principal place of business in Wadsworth, Ohio.

5. Upon information and belief, Defendants are citizens of the State of Georgia and reside and have offices and principal places of business in Chatham County, Georgia. Upon information and belief, Defendants are related by marriage. Ezell's current residence is 104 North Sheftall Circle, Savannah, Chatham County, Georgia 31410. Spinks' current residence is 204 Partridge Court, Rincon, Effingham County, Georgia 31326.

## FACTS

6. Cornwell is, and for many years prior to the acts herein complained of has been, engaged in the manufacture and sale in interstate commerce of high-quality precision tools, more specifically, mechanic's hand-tools and related equipment (the "Products") and the provision of related technical and distribution services (the "Services") under one or more of the following trademarks which are registered in the U.S. Patent and Trademark Office (the "Marks"):

| Registration No. | Registration Date | Date of First Use in Interstate Commerce |
|---|---|---|
| 1,276,565 | 5/1/84 | 1966 |
| 1,276,492 | 5/1/84 | 1966 |
| 1,163,457 | 8/4/81 | May, 1972 |
| 1,150,695 | 4/7/81 | 1966 |
| 1,139,026 | 8/26/80 | 1963 |

| 747,210 | 3/26/63 | 1962 |
|---|---|---|
| 747,209 | 3/26/63 | 1962 |

The Marks have been used continuously in interstate commerce in connection with the Products beginning at least as early as the dates set forth above. All of the Marks are currently registered and are incontestable pursuant to 15 U.S.C. § 1065.

7. The Marks were developed by Cornwell to distinguish the Products from tools and related items made and sold by others by, among other things, prominently displaying the Marks on the Products themselves, on containers and packaging used for the Products, on trucks and delivery vehicles used with the Products and Services, on uniforms and other forms of identification used by distributors and dealers delivering the Products and Services, with the Products and Services, and in trade and other advertising appearing in journals and periodicals distributed throughout the United States.

8. Cornwell's Products and Services are sold primarily in the professional mechanics' tools market, through independent dealers such as Defendants, who purchased the Products and Services from Cornwell.

9. High-quality precision mechanics' tools and related Services sold under the Marks are recognized by virtually all members of the mechanics' tools market as being Cornwell's Products and Services originating from Cornwell.

10. Cornwell has used the Marks continuously on and/or in connection with the Products and Services since their respective inception, and each have acquired strong secondary meaning as being indicative of the source of high-quality, precision mechanics' tools and related Services.

11. As a result of Cornwell's expenditure of a considerable amount of money and continuously marketing its Products and Services in connection with the distinctive and familiar

Marks, the consuming public has come to recognize all mechanics' tools and related items and Services sold in connection with the Marks as originating from or otherwise approved or sponsored by or affiliated or connected with Cornwell.

12. On or about November 4, 2003, Cornwell and Defendant Ezell entered into a written agreement entitled Cornwell Quality Tools Company Dealer Franchise Agreement ("Ezell Dealer Agreement"). Also on or about November 4, 2003, Cornwell and Defendant Spinks entered into a substantially similar Dealer Franchise Agreement ("Spinks Dealer Agreement"). A copy of the Dealer Agreements between Cornwell and Defendants are attached hereto as Exhibit A (Ezell) and Exhibit B (Spinks) and are incorporated herein by this reference.

13. The Dealer Agreements provided that Defendants were to be non-exclusive dealers of Cornwell's Products and Services. Pursuant to the terms of the Dealer Agreements and through such relationship, Defendants distributed Cornwell's Products and Services bearing the Marks and had the non-exclusive right to use the Marks in connection with the distribution of said Products and Services, including use of the Marks in sales and promotional materials, on delivery trucks, uniforms, containers, packaging and other items used in connection with the distribution of the Products and Services.

14. Under the Ezell Dealer Agreement, Cornwell agreed to sell and Defendant Ezell agreed to buy tools and market and sell Cornwell's Products and Services in parts of Chatham County, Georgia and Beaufort, South Carolina, as set forth in Paragraph 1 of the Ezell Dealer Agreement and the attachments thereto ("Ezell Territory"). Under the Spinks Dealer Agreement, Cornwell agreed to sell and Defendant Spinks agreed to buy tools and market and sell Cornwell's Products and Services in part of Chatham County, Georgia, all of Glynn County, Georgia, and

certain locations in Beaufort, Bluffton and Hilton Head, South Carolina, as set forth in Paragraph 1 of the Spinks Dealer Agreement and the attachments thereto ("Spinks Territory").

15. In the Dealer Agreements, Defendants recognized the validity of the Marks and agreed that they did not have, nor would they acquire, any interest in the Marks. Defendants further agreed not to do anything that would impair Cornwell's rights, title or exclusivity in the Marks. The Dealer Agreements also provided at Paragraph 5:

> Upon termination of this Agreement, Dealer [Defendants] shall immediately discontinue use of the CORNWELL TRADEMARKS and shall immediately remove all reference to the CORNWELL TRADEMARKS by way of signs or otherwise from its property and shall discontinue reference to said CORNWELL TRADEMARKS from its advertising media; it being understood that upon termination all rights pertaining to said CORNWELL TRADEMARKS shall thereupon automatically revert to Cornwell.

16. Shortly before May 11, 2005, Cornwell learned that Defendants were placing Cornwell trademark nameplates on non-Cornwell merchandise and were then passing the counterfeit goods off as Cornwell merchandise. Cornwell has recently learned that Defendants were similarly falsely labeling and passing off other non-Cornwell merchandise with Cornwell trademark stickers or decals.

17. On May 11, 2005, Cornwell sent each Defendant a Notice of Termination of that Defendant's Dealer Agreement, effective immediately. As a result, under Paragraph 5 of the Dealer Agreements, all of Defendants' non-exclusive rights to use the Marks terminated as of May 11, 2005. Defendants were advised that after May 11, 2005, they must cease to hold themselves out as Cornwell dealers and must remove all uses of the Cornwell trade name and trademarks from their trucks, clothing, stationery, business cards, etc. Copies of the termination letters to Defendants are attached as Exhibit C (Ezell) and Exhibit D (Spinks) and are incorporated herein by this reference.

18.     Defendants disregarded the demand made in the May 11, 2005, letters and continued to use some of the Marks, notably the registered tool array. Cease and desist letters were sent to each Defendant on June 24, 2005, which similarly were disregarded. Copies of the cease and desist letters to Defendants are attached as Exhibit E (Ezell) and Exhibit F (Spinks) and are incorporated herein by this reference.

## COUNT I. TRADEMARK INFRINGEMENT IN VIOLATION OF THE LANHAM ACT

19.     Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

20.     Despite termination of Defendants' Dealer Agreements, and letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants continue to so use the Marks without authorization in connection with Defendants' promotion and distribution of Defendants' goods and services in and affecting interstate commerce.

21.     Defendants' goods and services sold in connection with the Marks are sold in and/or otherwise affect interstate commerce to the same consuming public and travel through the same trade channels as Cornwell's Products and Services.

22.     Defendants' goods and services sold in connection with the Marks are functionally identical to and compete directly with Cornwell's Products and Services.

23.     Defendants have willfully and knowingly infringed and will continue to further infringe the rights of Cornwell and its federally registered Marks in violation of 15 U.S.C. § 1114, as a result of the continued, unauthorized use of the Marks, with the intention of deceiving and misleading the consuming public, and by wrongfully trading on the good will and reputation of Cornwell.

24. The use by Defendants of the Marks is likely to cause confusion or mistake or deception of purchasers as to the source, origin, sponsorship, affiliation, approval or connection of Defendants and their goods and services in that purchasers and others are likely to believe that Cornwell authorizes and/or controls the operation of Defendants' business or that Defendants continue to be associated with Cornwell, or that non-Cornwell merchandise was manufactured or sold by Cornwell.

25. By their wrongful acts, Defendant have caused and are likely to continue to cause great injury and damage to Cornwell which cannot now be accurately computed and, unless restrained by the Court, Defendants will continue to cause irreparable injury and damage to Cornwell and to the goodwill associated with Cornwell's Marks.

26. As a result of the foregoing, Cornwell has and will continue to suffer damages according to proof at trial. Consistent with 15 U.S.C. § 1117(a), among other remedies, Cornwell is entitled to recover its damages, Defendants' profits, and the cost of this suit.

27. Due to Defendants' prior agreements with Cornwell and the notices sent to Defendants, Defendants knew or should have known that they had no legal right to use Cornwell's Marks. Despite this knowledge, Defendants willfully infringed on Cornwell's Marks.

28. As a result of Defendants' willful infringement of Cornwell's Marks, Cornwell requests judgment in an amount three times its damages together with reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b).

**COUNT II. FALSE REPRESENTATION AND FALSE DESIGNATION OF ORIGIN**

29. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

30. After May 11, 2005, Defendants' use of the Marks in connection with the promotion and distribution of their goods and services in commerce, including but not limited to the false labeling of non-Cornwell merchandise, has caused or is likely to cause confusion, mistake and deception among the consuming public as to the origin, sponsorship, and/or approval of the Defendants' Products and Services.

31. As a result of Defendants' intentional and wrongful acts, purchasers have purchased or are likely to purchase Defendants' goods and services bearing the Marks thereby injuring Cornwell by diversion of sales to Defendants.

32. Cornwell has no control over the quality of the goods and services sold by Defendants and, because of the confusion as to the origin, sponsorship or approval of the Defendants' goods and services engendered by Defendants, Cornwell's extensive and valuable goodwill is at the mercy of the Defendants, and Cornwell will suffer irreparable harm should such conduct be allowed to occur.

33. Such acts by Defendants were willful and deliberate, designed to specifically trade upon the enormous and valuable goodwill of Cornwell. Defendants' acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

34. By their wrongful acts, Defendants have caused and will continue to cause great harm and damage to Cornwell which cannot now be assessed or computed and, unless restrained by the Court, will continue to cause irreparable injury and damage to Cornwell and to the goodwill associated with the Marks.

35. Due to Defendants' prior agreements with Cornwell, and the notices sent to Defendants, Defendants knew or should have known that they had no legal basis to use Cornwell's

Marks. Despite this knowledge, Defendants willfully violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

36. As a result of Defendants' willful Lanham Act violations, Cornwell requests the Court enter judgment for three times Cornwell's damages, together with reasonable attorney's fees pursuant to 15 U.S.C. § 1117(b).

### COUNT III. DILUTION

37. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

38. The use by Defendants of the Marks in connection with Defendants' goods and services, and the false labeling of non-Cornwell merchandise, is likely to injure the business reputation of Cornwell because such use is under the control of Cornwell and the nature and quality of Defendants' goods and services sold under the Marks will not meet the high-quality standards established by Cornwell for its Marks.

39. The use by Defendants of the Marks in connection with the Defendants' goods and services, including but not limited to the false labeling of non-Cornwell merchandise, will tend to dilute the distinctive quality of the Marks.

40. Defendants' aforesaid acts constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

41. Defendants' aforesaid acts constitute dilution under Georgia State law, entitling Cornwell to injunctive relief pursuant to O.C.G.A. § 10-1-451(b).

42. Defendant's acts greatly and irreparably damage Cornwell and will continue to so damage Cornwell unless restrained by this Court; wherefore, Cornwell is without an adequate remedy at law.

## COUNT IV.  UNJUST ENRICHMENT

43. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

44. This claim arises under the principals of equity concerning unjust enrichment and misappropriation of rights.

45. Cornwell has expended a considerable amount of time, money and effort developing and promoting the Marks for Cornwell's Products and Services.

46. Until recently, Defendants were non-exclusive dealers of Cornwell's Products and Services.  Through such relationship, Defendants have received from Cornwell and distributed to Defendants' customers sales and promotional material as well as Cornwell's goods and services bearing the Marks.

47. Through its relationship with Cornwell, Defendants acquired actual knowledge that the consuming public recognizes mechanics' tools and related items sold under Marks as emanating from Cornwell.

48. The unauthorized use of the Marks by Defendants for their goods and services or goods of Cornwell's competitors has caused and is likely to cause confusion with Cornwell's Products and Services bearing the Marks.

49. Defendants have acted unfairly in using the Marks.

50. Defendants have taken and will continue to take unfair advantage of the goodwill and business value developed by Cornwell in the Marks.

51. Defendants have misappropriated and will continue to misappropriate and illegally exploit the valuable property rights and goodwill of Cornwell and its Marks.  As a result of such

misappropriation, Cornwell will suffer irreparable injury to its property and goodwill, and Defendants will be unjustly enriched thereby to the detriment of Cornwell.

### COUNT V. VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT

52. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

53. Defendants have intentionally sold and advertised their goods and services under the Marks so as to pass off their goods and services and those of other manufacturers and sellers of merchandise as those of Cornwell, to confuse and deceive purchasers as to the source, sponsorship, approval or certification of, or the affiliation, connection or association with Defendants' goods and services; and to obtain the acceptance of Defendants' goods and services based on the reputation and goodwill of Cornwell and its high quality Products and Services sold in connection with Marks.

54. Defendants' actions have caused and will continue to cause confusion, mistake and deception among the purchasing public as to the source of Defendants' goods and services. Further, Defendants' actions have deceived, are deceiving, and are likely to deceive others into believing that Defendants' goods and services are sponsored by, approved by, or affiliated with Cornwell.

55. Defendants' unauthorized used of Cornwell's Marks constitutes an unfair or deceptive act or practice and an unfair method of competition in the conduct of trade or commerce, which is and will be injurious to the public interest, in violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 et seq.

56. As a result of these acts of infringement, deception, and unfair competition, Cornwell has suffered and will continue to suffer great injury and damage, which cannot now be accurately computed, and will continue to suffer irreparable injury to its reputation and goodwill unless restrained by this Court; wherefore, Cornwell is without an adequate remedy at law.

## COUNT VI.  COMMON LAW UNFAIR COMPETITION

57. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

58. Defendants' unauthorized use of Cornwell's Marks, including but not limited to the false labeling of non-Cornwell merchandise, constitutes an attempt to palm off their goods and services and to compete unfairly with Cornwell, both of which have created, are creating, and are likely to create consumer confusion. This conduct constitutes common law unfair competition.

59. Defendants' acts greatly and irreparably damage Cornwell and will continue to so damage Cornwell unless restrained by this Court; wherefore, Cornwell is without an adequate remedy at law.

## COUNT VII.  TRADEMARK IMITATION

60. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

61. Use of the Marks by Defendants, including but not limited to the false labeling of non-Cornwell merchandise, is likely to cause confusion or mistake or to deceive as to the source or origin of Defendant's goods and services and therefore constitutes trademark imitation in violation of Georgia statutory and common law.

62. Defendants' acts greatly and irreparably damage Cornwell and will continue to so damage Cornwell unless restrained by this Court; wherefore, Cornwell is without an adequate remedy at law.

## COUNT VIII.  BREACH OF CONTRACT

63. Cornwell realleges and incorporates by this reference each and every allegation contained in the preceding paragraphs of this Complaint.

64. Under the Dealer Agreements, Cornwell agreed to sell and Defendant agreed to buy tools so as to market and sell Cornwell's Products and Services in the Ezell Territory and Spinks Territory, as set out in Paragraph 1 of the Dealer Agreements.

65. Under Paragraph 5 of the Dealer Agreements, Defendants recognized the validity of the Marks, agreed to have no interest in the Marks and agreed to do no act that would impair Cornwell's rights in the Marks, and that after termination of the Dealer Agreement, Defendants would cease all use of the Marks.

66. Under Paragraph 5 of the Dealer Agreement, as a result of the termination of each Defendant's Dealer Agreement, all of Defendants' non-exclusive rights to use the Marks immediately terminated.

67. Despite such termination and letters to Defendants notifying Defendants that they no longer had any rights whatsoever to continue to use the Marks, and despite threat of legal action, Defendants continue to so use the Marks without authorization in connection with Defendants' promotion and distribution of Defendants' goods and services and in affecting interstate commerce. Defendants' acts constitute breach of contract.

68. Cornwell has performed all conditions and covenants Cornwell is required to perform under the Dealer Agreement, except those excused by Defendants' conduct.

69. As a proximate result of Defendants' acts, Cornwell has suffered damage in an amount unknown at this time, but according to proof at trial.

WHEREFORE, Cornwell prays this Court grant the following relief against Defendants James L. Ezell and Douglas H. Spinks, jointly and severally:

(1) For a temporary, preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, successors and assigns, and all others acting in concert or participating with them as follows:

    a. From infringement of Cornwell's Marks (U.S. Trademark Registration Numbers 1,276,565; 1,276,492; 1,163,457; 1,150,695; 1,139,026; 747,210 and 747,209) in violation of 15 U.S.C. § 1114 through the display of said Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials, or otherwise infringing upon Cornwell's Marks;

    b. From falsely representing affiliation with Cornwell and falsely designating the origin of Defendants' goods and services in violation of 15 U.S.C. § 1125(a) through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials or otherwise falsely representing affiliation with Cornwell or falsely designating Cornwell as the origin of Defendants' goods and services.;

    c. From diluting Cornwell's Marks in violation of 15 U.S.C. § 1125(c) and/or in violation of O.C.G.A. § 10-1-451(b) through the display of those Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials, or otherwise diluting Cornwell's Marks;

  d. From unjustly enriching themselves through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials, or otherwise unjustly enriching themselves by the use of Cornwell's Marks;

  e. From causing confusion, mistake and deception among the purchasing public as to the source or affiliation of Defendant's goods and services in violation of the Georgia Fair Business Practices Act through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendant's non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials, or otherwise causing confusion, mistake and deception among the purchasing public as to the source or affiliation of Defendants' goods and services as to Cornwell;

  f. From unfairly competing with Cornwell through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising, uniforms or any other business equipment or marketing materials or otherwise unfairly competing with Cornwell;

  g. From imitating Cornwell's Marks in violation of Georgia statutory and common law through the display of Cornwell's Marks by requiring the complete obliteration of all Marks in the form of nameplates, decals or otherwise from Defendants' non-Cornwell inventory, vehicles, stationery, business cards, invoices, packaging, containers, advertising,

uniforms or any other business equipment or marketing materials or otherwise imitating Cornwell's Marks;

    h.    From leading anyone to believe or representing, either orally or in writing, that Defendants are Cornwell's dealers or distributors or otherwise professionally affiliated or associated with Cornwell;

    i.    For an order to surrender for destruction all nameplates, decals, labels, stationery, business cards, invoices, packaging, containers, advertising materials, uniforms or any other business equipment or marketing materials which displays Cornwell's Marks; and

    j.    For an order to account to Cornwell for Defendants' profits and the actual damages suffered by Cornwell as a result of Defendants' acts of infringement, false representation, false designation of origin, unfair competition, unfair deceptive trade practices and dilution of Cornwell's Marks and injury to Cornwell's business reputation and goodwill.

(2)    For an order directing each Defendant to file with the Court and serve on Cornwell an affidavit setting forth in detail the manner and form in which he has complied with the terms of the injunction, in accordance with 15 U.S.C. § 1116;

(3)    That Cornwell be awarded its reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a) and Georgia statutory and common law, or as otherwise provided by law, and any further relief the Court deems just and proper.

HUNTER, MACLEAN, EXLEY & DUNN, P.C.

*/s/ Wade W. Herring, II*
_____
Wade W. Herring, II
Georgia Bar Number 349343

*/s/ Shawn A. Kachmar*
_____
Shawn A. Kachmar
Georgia Bar Number 405723

PO Box 9848
200 E. Saint Julian St.
Savannah, Georgia 31412-0048
(912) 236-0261 (telephone)
(912) 236-4936 (fax)

GOLDMAN & ROSEN LTD.
Robert M. Gippin
Ohio Bar Number 0023478
(Pro Hac Vice Application to be Filed)

11 South Forge Street
Akron, Ohio  44304
(330) 255-0716 (telephone)
(216) 274-9124 (fax)

Attorneys for Cornwell Quality Tools Company

599923-1

# EXHIBIT A

James Ezell "Lance" 45X9
Franchised GA 11/4/03
Gamble



# CORNWELL QUALITY TOOLS COMPANY

# DEALER FRANCHISE AGREEMENT

2003

DFA010702



# DEALER FRANCHISE AGREEMENT

THIS DEALER FRANCHISE AGREEMENT ("Agreement") made this ___4th___ day of ___November___ 2003, by and between THE CORNWELL QUALITY TOOLS COMPANY Of Wadsworth, Ohio ("Cornwell"), and ___James Ezell___ of ___104 North Sheftall Circle___ Residence ___Savannah___ City ___GA___ State ___31410___ Zip, and his or her spouse as active partners in the operation of the franchise (individually and/ or collectively referred to as "Dealer")

**RECITALS**

A.   Cornwell represents that it is a manufacturer and distributor of various tools and other items of use in the automotive repair business (the "Products").

B.   Cornwell desires to grant to the Dealer a franchise to purchase and resell the Products with primary responsibility on Dealer's part to serve the automotive aftermarket in the area defined below (the "Territory") and the Dealer desires to serve in such capacity.

In consideration of the mutual promises set forth, the Dealer and Cornwell agree as follows:

1.   Cornwell grants to the Dealer the right, and the Dealer undertakes the obligation, upon the terms set forth in this Agreement, to operate a franchise selling the Products in the Territory described as follows:

**Please see enclosed map and Addendum #1**

This Agreement shall continue until terminated, as set forth in Paragraphs 13, 14, and 16 below.

2.   Cornwell agrees to sell dealer products in such quantities as Dealer requires and at such prices as Cornwell may determine from time to time.

1